IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-204-D

| | |
|---|---|
| JAMES KENNETH MANNING, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

In this action, plaintiff James Kenneth Manning, Jr. ("plaintiff" or "claimant") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 17, 19). Each party filed a memorandum in support of its motion (D.E. 18, 20). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 21). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

**I. BACKGROUND**

**A. Case History**

Plaintiff filed an application for DIB on 24 February 2009, alleging a disability onset date of 10 December 2008. Transcript of Proceedings ("Tr.") 11. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 13 January 2011, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 26-51.

In a written decision dated 27 January 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 11-22. Plaintiff timely requested review by the Appeals Council. Tr. 7. The Appeals Council denied the request for review on 24 July 2012. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 31 August 2012, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

2

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C. **Findings of the ALJ**

Plaintiff was 51 years old on the alleged onset date of disability and 53 years old on the date of the administrative hearing. Tr. 20 ¶ 7. He has a high school education and past work as a telephone office equipment installer. Tr. 20 ¶¶ 6, 8; 30, 31.

3

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 13 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations: diabetes mellitus, depression, anxiety, degenerative joint disease in his right hip, lumbar degenerative disc disease, and obesity. Tr. 13 ¶ 3; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 14 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of medium work (*i.e.*, work involving lifting, carrying, pushing, or pulling up to 50 pounds occasionally and 25 pounds frequently). *See* 20 C.F.R. § 404.1567(c).[1] Specifically, he found that plaintiff: could stoop, crouch, kneel, and crawl only frequently; could interact only occasionally with coworkers and supervisors and not at all with the public; and could perform only simple, routine, and repetitive tasks ("SRRTs") and not jobs requiring complex decision making, constant change, or dealing with crises. Tr. 15 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work. Tr. 20 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including kitchen helper, laundry worker, and hospital cleaner. Tr. 21-22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 21 ¶ 11.

---

[1] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c, def. of "Medium Work," http://www.oalj.dol.gov/libdot.htm (last visited 16 April 2013). "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131

F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.    Plaintiff's Contentions

Plaintiff contends that the ALJ erred by not finding that he met or medically equaled Listings 12.04 and 12.06, and by not properly assessing plaintiff's RFC. Plaintiff's contentions are addressed in turn below.

### C.    ALJ's Determination regarding Listings 12.04 and 12.06

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

As indicated, even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (mag. judge's rep. & recommendation) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *adopted*, Unreported Order (D.E. 19) (22 May 2012); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

At step three, the ALJ found that plaintiff's impairments did not meet Listing 12.04 for affective disorders or Listing 12.06 for anxiety-related disorders. Tr. 14 ¶ 4. Listing 12.04 is met if an individual meets the A and B criteria, or if he meets the C criteria. Listing 12.04. Listing 12.06 is met if an individual meets the A and B criteria or the A and C criteria. Listing 12.06. The B criteria are met by having at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listings 12.04B, 12.06B. For the first three functional areas, the ratings, in order of increasing level of limitation, are none, mild, moderate,

marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4); Listing 12.00C1-3. The last area—repeated episodes of decompensation, each of extended duration—means three episodes within one year or an average of one every four months, each lasting at least two weeks. *See* Listing 12.00C4. The C criteria for Listing 12.04 require a chronic affective disorder of two years' duration with certain specified characteristics. Listing 12.04C. The C criteria for Listing 12.06 require a disorder specified in the A criteria resulting in the complete inability to function outside the area of the home. Listing 12.06C.

In his decision, the ALJ found that plaintiff did not meet Listing 12.04 because he did not satisfy either the A, B, or C criteria. Tr. 14 ¶ 4. He found that plaintiff did not meet Listing 12.06 because he did not satisfy the B or C criteria. Tr. 14 ¶ 4. With respect to the B criteria, the ALJ found plaintiff to have mild restriction of activities of daily living; moderate difficulties in social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 14 ¶ 4. Plaintiff challenges the ALJ's B criteria determination, which by definition relates to both Listings 12.04 and 12.06, along with his A criteria determination regarding Listing 12.04. Plaintiff does not challenge the C criteria determination relating to either listing.

Regarding the B criteria, plaintiff contends that the ALJ's determination in the first three functional areas is not supported by substantial evidence and that his limitations in these areas are at the marked level.[2] He does not challenge the ALJ's determination regarding episodes of decompensation, and it is therefore not at issue in this appeal. Plaintiff further argues that the ALJ did not adequately explain his listing determination regarding the B criteria or otherwise. The court finds plaintiff's contentions to be meritless.

---

[2] While at one point, plaintiff argues that his limitations are at the "marked to extreme" level (*see* Pl.'s Mem. 8), he otherwise argues that they are at the marked level. Needless to say, a limitation that fails to reach the marked level necessarily also fails to reach the extreme level.

8

Case 4:12-cv-00204-D   Document 22   Filed 04/16/13   Page 8 of 16

In the listing determination itself, at step three of the sequential analysis, the ALJ provides his ratings in the functional areas comprising the B criteria; points out the absence of at least marked limitations in any two areas or at least marked limitations in one area and repeated episodes of decompensation as required to meet the B criteria; and notes the lack of clinical findings indicating that his conditions medically equal the listings. Tr. 14 ¶ 4. While the ALJ does not at that point elaborate on the rationale for his determination, his subsequent analysis of plaintiff's RFC makes clear the reasons underlying his determination on Listings 12.04 and 12.06. Contrary to plaintiff's contention, the fact that the reasons underlying the ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error since the decision read as a whole makes them clear. *See, e.g., Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Lydia v. Astrue*, No. 2:11–1453–DCN–BHH, 2012 WL 3304107, at *5 (D.S.C. 25 Jul. 2012) (mag. judge's rep. & recommendation) ("This sort of deconstruction of the ALJ's decisions is not useful. The ALJ's decision must be read as a whole."), *adopted*, 2012 WL 3308108 (13 Aug. 2012); *Finley v. Astrue*, No. 5:08–CV–209–D(1), 2009 WL 2489264, at *5 (E.D.N.C. 8 Jul. 2009) (mag. judge's mem. & recommendation) ("[T]he ALJ's decision may appropriately be read 'as a whole.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3rd Cir. 2004))), *accepted*, 2009 WL 2489264, at *1 (13 Aug. 2009).

In the RFC analysis, the ALJ elaborates on his assessment of plaintiff's mental impairments, in part, as follows:

> The claimant was able to care for his personal needs and activities of daily living independently. Although the claimant alleged severe symptoms of depression and being out in the public around people, he testified that he went out for lunch daily. His brother-in-law also testified that he would see the claimant at a restaurant 3 to 4 times a week. In a consultative examination [on 24 August 2009], [Disability

9

Case 4:12-cv-00204-D Document 22 Filed 04/16/13 Page 9 of 16

Determination Service ("DDS")[3] psychiatrist Carol M. Gibbs, M.D.] had indicated that within a work setting, the claimant should be capable of understanding simple, repetitive instructions and even slightly complex instructions and task[s]. She had further noted that the claimant's ability to effectively get along with others in a work environment would not be impaired and his ability to deal effectively with work pressures would be moderately impaired.

Tr. 19 ¶ 5. Substantial evidence supports these findings. *See* Tr., *e.g.*, 37, 47, 185, 194, 224, 225, 232.

Further insight into and support for the ALJ's determination on the B criteria are to be found in his discussion of the opinions of the two nonexamining consulting DDS psychologists, Cal Vander Plate, Ph.D. and Nancy Y. Herrera, Ph.D. As the ALJ noted, in the Psychiatric Review Technique form Dr. Vander Plate completed on 29 December 2009, he found that plaintiff's limitations in the three functional areas at issue did not reach the marked level. Tr. 18 ¶ 5; 277. The ALJ also noted various functional capacities Dr. Vander Plate, in a Mental RFC Assessment form, found plaintiff to have—"understanding and remembering simple instructions, sustaining concentration and persistence of pace necessary to perform unskilled work[,] . . . interacting appropriately with the general public, coworkers, peers and supervisors and . . . adapting to routine changes in the work environment"—that are inconsistent with plaintiff's allegations of marked limitations. Tr. 18 ¶ 5 (referring to Tr. 283).

In addition, the ALJ points to the conclusion of Dr. Herrera in her Mental RFC Assessment form of 2 September 2009 that plaintiff was capable of SRRTs. Tr. 18 ¶ 5; 243. This is one of several capacities Dr. Herrera found plaintiff to have that are also inconsistent with the marked limitations plaintiff alleges he had. *See* Tr. 243. Additionally, Dr. Herrera found in a

---

[3] The Disability Determination Services is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 16 Apr. 2013).

Psychiatric Review Technique form of the same date that none of plaintiff's limitations in the three functional areas in question reached the marked level. Tr. 255. The ALJ stated that he gave the medical opinions of Dr. Vander Plate and Dr. Herrrera "moderate weight," clearly agreeing that plaintiff could work, but finding that the limitations on the work he could perform were greater that than determined by these psychologists. Tr. 18 ¶ 5.

In support of his argument that his limitations in the three areas at issue were at the marked level, plaintiff relies to a significant degree on his own testimony at the hearing. The ALJ, however, lawfully determined that "the claimant's statements concerning the intensity, persistence and limiting effects of the[] [alleged] symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 19 ¶ 5. That is, the ALJ first determined that plaintiff's medically documented impairments could cause his alleged symptoms, *Craig*, 76 F.3d at 594-95, and then evaluated his statements concerning those symptoms, *id.* at 595, and, finding them not to be fully credible, cited "'specific reasons'" for that finding that are "'supported by the evidence,'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms). *See* Tr. 19-20 ¶ 5. The ALJ also lawfully determined that testimony by plaintiff's brother-in-law supportive of plaintiff "cannot be considered unbiased" given his status as a close family member. Tr. 16 ¶ 5.

Plaintiff also points to statements in the office visit notes of his primary care physician, Stacey A. Blyth, M.D., to the effect that he could not work because of his mental impairments. *See* Tr. 210, 286, 289. These statements, however, appear simply to be recitations of statements made to Dr. Blyth by plaintiff, rather than her opinions. Even if these statements were deemed opinions of Dr. Blyth, her status as a family practitioner, rather than a psychiatrist or

11

psychologist, would tend to diminish the weight attributable to them. *See* 20 C.F.R. § 404.1527(d)(5). Further, because they deal with the ultimate issue of disability, they would not be entitled to special weight because of their source. *See id.* § 404.1527(e)(1).

While ruling that plaintiff's depression and anxiety did not meet Listings 12.04 and 12.06, the ALJ hardly ignored them. He found them to be severe impairments at step two of the sequential analysis (Tr. 13 ¶ 3) and included numerous limitations in his RFC determination responsive to these and the other mental impairments plaintiff was found to have: only occasional interactions with coworkers and supervisors; no interaction with the public; no work requiring complex decision making, constant change or dealing with crises; and performance of only SRRTs (Tr. 15 ¶ 5).

The court concludes that the ALJ's determination that plaintiff did not meet or medically equal the B criteria in listings 12.04 and 12.06, and thereby that plaintiff did not meet or medically equal these listings, is based on proper legal standards and supported by substantial evidence. Having reached this conclusion, the issue of whether the ALJ properly found that plaintiff did not meet or medically equal the A criteria of Listing 12.04 is moot and the court need not address it. Plaintiff's initial challenge to the ALJ's decision therefore fails.

### D. ALJ's Assessment of Plaintiff's RFC

The court finds no error in the ALJ's RFC assessment. After reviewing the medical and other evidence comprehensively (*see* Tr., *e.g.*, 16-19 ¶ 5), he presents a detailed explanation of his assessment of plaintiff's impairments grounded in the record (*see* Tr., *e.g.*, 19-20 ¶ 5).

For example, with regard to plaintiff's diabetes, the ALJ explained:

[C]laimant's diabetes . . . was up and down, and he had testified that he continues to consume alcohol knowing that this caused his blood sugars to elevate. Dr. Blyth had noted that the claimant had admitted that he did not check his blood

12

sugar frequently. She had also noted that the claimant was positive for excessive alcohol, but he would not say specifically how much.

Tr. 19-20 ¶ 5; *see also* Tr., *e.g.*, 39-40, 210, 216, 218, 219, 220, 292.

Regarding plaintiff's orthopedic impairments, the ALJ found:

In terms of the claimant's alleged symptoms of back and hip pain, he had testified that he was able to vacuum for about 2 to 3 minutes at a time. Although the claimant complained of constant back and hip pain, in a consultative examination, he acknowledged that he could sit and watch a number of TV talk shows. On September 1, 2009, [DDS consulting physician Satish K. Kumar, M.D.] had noted in his examination that the claimant was observed walking pretty well and without a limp. The claimant's motor power in all extremities was 5 out of 5. Dr. Kumar had also indicated that the claimant had acknowledged that sitting was not a problem for him.

. . . .

The claimant does not have any significant anatomical structural deformities and there is no evidence of ongoing nerve root compression, which might be expected based on the degree of pain alleged. The claimant testified that he use[s] over-the-counter medication for symptom relief. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged. In addition, the medical evidence do[es] not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process.

Tr. 19, 20 ¶ 5; *see also* Tr., *e.g.*, 36, 224, 232.

On obesity, the ALJ stated:

The Administrative Law Judge has taken the claimant's obesity into account in formulating the [RFC] found . . . in terms of his limitations and restrictions arising therefrom in accordance with Social Security Ruling 02-1p. The claimant's obesity does not prevent him from moving his limbs, lifting or carrying 25-50 pounds, or from sitting, standing and walking six hours of an 8-hour workday.

Tr. 13 ¶ 3; *see also* Tr., *e.g.*, 260, 266.

Substantial evidence supports each set of these determinations by the ALJ. As previously discussed (albeit in the context of the ALJ's listing determination), substantial evidence also supports the ALJ's assessment of plaintiff's mental impairments. Moreover, the ALJ

13

acknowledged his obligation to "consider all of the claimant's impairments, including impairments that are not severe." Tr. 12. His thorough discussion of plaintiff's impairments substantiates that he did consider the nonsevere impairments along with the severe. *See* Tr., e.g., 16-19 ¶ 5 (discussing, *e.g.*, psoriasis, hyperlipidemia, elevated liver function, hypercholesterolemia, hypertension).

Further support for the ALJ's RFC determination is found in the opinion of consulting DDS physician Val Sokolev, M.D., M.P.H. He found in his Physical RFC Assessment form of 22 December 2009 that plaintiff could perform work at the medium exertional level without postural, manipulative, visual, communicative, or environmental limitations. Tr. 18 ¶ 5; 260-63. The ALJ found plaintiff "more limited based on testimony and the medical evidence of record and therefore he gives moderate weight to this opinion." Tr. 18 ¶ 5. Consistent with this finding, the ALJ limited plaintiff to only frequent stooping, crouching, kneeling, and crawling. Tr. 15 ¶ 5.

Plaintiff contends that the record establishes that he could perform, at most, sedentary work and that, at the sedentary level, Medical-Vocational Guideline 201.12 would direct a finding of disabled.[4] He argues specifically that the combined effect of his impairments, including in particular psoriasis, deprives him of the stamina and strength to perform, at least above the sedentary level, work activity on a regular and continuing basis, that is, eight hours a day five times a week or on an equivalent schedule. *See* 20 C.F.R. § 404.1545(c); Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996).

---

[4] This guideline is based on the following factors: closely approaching advanced age (age 50-54); high school graduate or more (not providing for direct entry into skilled work); and unskilled nature of previous work. Medical-Vocational Guideline 201.12. Although in his brief plaintiff sets this contention out as a separate ground for his appeal (*see* Pl.'s Mem. 13-16), the court finds it more appropriately addressed as part of plaintiff's challenge to the ALJ's RFC assessment.

14

But the evidence plaintiff cites simply does not compel this conclusion. Nor does it negate the presence of substantial evidence supporting the ALJ's determination that plaintiff could perform medium-level work, as reviewed above. Notably, while emphasizing his psoriasis, plaintiff did not challenge the ALJ's implicit determination it was not a severe impairment, signifying that "it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphases in original) (internal quotations omitted); *see also* 20 C.F.R. § 404.1521(a). It bears repeating that the issue before the court is not whether the ALJ could have reached a different result, but whether the result he did reach is supported by substantial evidence. *See Blalock*, 483 F.2d at 775.

Plaintiff argues that the ALJ reveals his lack of understanding of plaintiff's impairments by finding that "[t]he claimant does not have any significant anatomical structural deformities and there is no evidence of ongoing nerve root compression." Tr. 20 ¶ 5. He contends that he never alleged any such conditions. The ALJ, however, makes clear why he made the determination on these conditions: "[they] might be expected based on the degree of pain alleged." Tr. 20 ¶ 5. Thus, the ALJ made the finding plaintiff now derides in response to plaintiff's own allegations.

The court concludes that the ALJ's RFC determination was based on proper legal standards and supported by substantial evidence. This remaining challenge to the ALJ's decision should accordingly be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 19) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 17) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 April 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 16th day of April 2013.

James E. Gates
United States Magistrate Judge